In re REDONDO CONSTRUCTION CORPORATION, Debtor.

Redondo Construction Corporation, Plaintiff,

v.

Puerto Rico Highway and Transportation Authority, Defendant.

Bankruptcy No. 02–02887 (GAC). Adversary No. 02–0113.

United States Bankruptcy Court, D. Puerto Rico.

Aug. 31, 2009.

As Amended Sept. 3, 2009.

---

Charles Alfred Cuprill, Charles A. Cuprill, PSC Law Office, Charles P. Gilmore, O'Neill & Gilmore, Freddie Perez Gonzalez, Peter W. Miller, Weinstein–Bacal & Miller PSC, San Juan, PR, for Debtor.

## DECISION AND ORDER

GERARDO A. CARLO, Chief Judge.

### I. PROCEDURAL BACKGROUND

Pending before the Court is the complaint filed in the present adversary procedure, by Redondo Construction, Corp. ("Redondo"), to determine if the Puerto Rico Highway and Transportation Authority ("PRHTA") is required to pay Redondo additional compensation, including interests, for unpaid claims and damages allegedly resulting from the work performed by Redondo under the following contracts: Contract AC–019916 (Las Cumbres Avenue, El Capa); Contract AC–020303 (Rio Grande de Loiza Bridge); Contract AC–220095 (Kennedy Avenue—Caparra Interchange); Contract AC–100029 (Ponce Adjuntas—PR–19) and Contract AC–800135 (Third Millennium Park).

Redondo is requesting additional compensation for extended jobsite and home office overhead costs, additional compensation for inefficiencies in the prosecution of the work due to the actions or omissions of the PRHTA, reimbursement of additional patent and excise taxes allegedly paid by Redondo due to the increase in the value of the contracts, reimbursement of additional insurance and bond costs allegedly paid by Redondo due also to the increase in the value of the contracts, reimbursement of improperly assessed liquidated damages, payment for additional work allegedly performed by Redondo but not paid by the PRHTA, and a fifteen per cent (15%) mark-up on all claim items as profit.

PRHTA contends that Redondo did not prove its entitlement to most of the remedies sought, or demonstrated the indispensable cause and effect relationship between the impacts and the additional costs claimed. PRHTA also asserts that in the rare instances that Redondo did prove its entitlement to said remedies, he did not establish or substantiate the amount owed as compensation.

The Court held the trial of the present adversary proceeding on November 27–30, 2006; December 1, 2006; March 9, 2007; March 15, 2007; March 19–21, 2007; June 46 and 25–27, 2007; and November 5–7, 2008. Then on March 27, 2009, PRHTA filed the post trial brief with proposed findings and conclusions of law (docket

\# 364) and on the same day, Redondo filed the post trial brief and the memorandum with the finding of facts (dockets \# 365 and \# 366).

## II. *General Factual Background*

Redondo has been engaged in the construction business for thirty years, particularly in public or government projects, prior to the filing for bankruptcy.

Prior to the filing of its petition for bankruptcy relief, Redondo entered into various construction contracts with the PRHTA and the Department of Transportation and Public Works of Puerto Rico, with regard to the following projects: Contract AC–019916—Ave. Las Cumbres—El Capa (May 11, 1998); Contract AC–020303—Rio Grande de Loiza Bridge (April 11, 1996); Contract AC–220095—Ave. Kennedy–Caparra Interchange (October 31, 1997); Contract AC–100029—Ponce—Adjuntas PR–10 (October 30, 1996); and, Contract AC–800135—Parque del Tercer Milenio ("Third Millenium Park") (November 17, 1998).

The master contract for each project is contained in a contract book that incorporates the award, the bid documents, the plans and specifications. The master contract also incorporates the Commonwealth of Puerto Rico, Department of Transportation and Public Works and Highway Authority's "Standard Specifications for Road and Bridge Construction of 1989" (The Blue Book).

On August 21, 2001 Redondo submitted to the PRHTA the claims for time extensions, inefficiency, extended overhead, lost profits, and/or other concepts for several projects, including the five projects concerned herewith. At the time of the filing of the complaint all five projects were completed and the PRHTA had not informed Redondo of the results of any audit of the claims presented.

By May of 2003, after the filling of bankruptcy, Redondo retained the firm of FPV & Co. to calculate its job site and main office extended overhead for each project and issued a report signed by CPA, Rafael Perez Villarini, with said calculations. The reports prepared by Rafael Perez Villarini for each project were styled "Independent Accountant's Report on Applying Agreed Upon Procedures." Rafael Perez Villarini is a Certified Public Accountant who is also certified as a Valuation Analyst.

Andrew Civitello ("Civitello") testified as Redondo's expert in construction management and Sid Scott ("Scott") testified as PRHTA's expert in construction claims.

## III. *Position of the Parties as to each claims in all of the Projects*

In the present case ten claims are still pending. Redondo claims: 1. Extended main office overhead and Extended job site overhead, 2. Inefficiency, 3. Insurance and Bonds Premiums, 4. Patent and Excise Taxes, 5. Profit (15%), 6. Liquidated Damages, 7. Termination of contract, 8. Interest at 6%, 9. Overcharge, and 10. Unpaid Application for Certifications.

## A. *Redondo*

### 1. **Extended Main Office Overhead and Extended Job Site Overhead**

Redondo asserts that the calculation of the job site overhead was made from Redondo's accounting records for each particular project, taking in consideration overhead for each category incurred during the period of the contract (when it commenced to when it was substantially completed). The total job site overhead was then divided by the number of days to obtain a per day ("per diem") expense, which was multiplied by the days for the extended period ("the extensions of time"). The original information was obtained from Redondo's

Accounting and Cost Departments. The home office expenses come from the Accounting Department, and the job site information comes from the project engineers who furnished the same to the Cost Department.

To determine the proportion of home office overhead that could be attributable to the extended period for a particular contract, Perez Villarini used the Eichleay formula, which is the most widely used for claims of extended overhead. Eichleay applies to partial suspensions, and not necessarily to total suspensions. A partial suspension means that some items are continuing, and some items are not. That is what happened in Redondo's claims.

## 2. Inefficiency

Redondo asserts that its computations were verified by Civitello. A method for calculating the same is to understand the way an activity or process is planned, and what that cost would be for the planned method of completing that work; if the activity is interrupted or affected, taking a longer or shorter time, the characteristics of the work may change; if conditions on the project occur, that differ from the conditions that were anticipated when the cost for that activity was prepared, and those conditions affect the performance of that work, that is a typical inefficiency.

Inefficiency is a normal item to add, because of the character of these projects, particularly the fact that work continued for such a long time after substantial completion, and the nature of the interruptions, are characteristic of inefficient work. These impacts caused re-sequencing of work, in order to complete it, according to whatever work areas were available. The inefficiencies in these claims were caused because the planned scheme got changed and broken up in multiple times by the Authority.

The problems encountered were: of design, conditions on the site were different, sub-surface conditions under the ground were different than anticipated on the bid, and the inability of the Authority to make the areas within alignments available. Therefore, Redondo was prevented from working through the project footprint, in the sequence, as they should.

## 3. Insurance and Bonds Premiums

Redondo asserts that as per their contract with PRHTA and the Blue Book, it is entitled to the additional insurance and bonds premiums paid attributable to the Extra Work Order.

## 4. Patents and Excise Taxes

Redondo asserts that as per their contract with PRHTA and the Blue Book, it is entitled to the additional patents and excise taxes paid attributable to the Extra Work Order.

## 5. Profit

Civitello determined a profit margin of 15% above all cost items. Also, in some of the agreements with Redondo, the Authority acknowledged a 15% profit, and in the industry the reasonable range is between 5% to 20%. Civitello applied profit to the item of overhead because profits are applied to direct costs like labor and materials.

## 6. The Liquidated Damages

With regard to the imposition of liquidated damages, Civitello concluded that it was improper. The provision for liquidated damages states that they apply in cases where the contractor is in default. Here, they were applied automatically without any notice of default on Redondo's part. The Authority withheld the liquidated damages contemporaneously from

current applications for payment. There was no contractual procedure followed to make any previous determination of contractor default first. This, without even considering the basis for the delay (*Id.*).

### 7. Termination of Contract

Redondo asserts that Section 108.11 of the Blue Book allows the contractor to claim for its damages and costs related to the termination of a contract or to a portion thereof.

### 8. Interest

Redondo asserts that the Blue Book also provides for the payments of interest at the legal rate and 31 LPRA § 3025 provides that the legal interest, in cases of contractual delay, is 6% per year. Civitello calculated interest from a very conservative standpoint. He used as the starting point "the payment due", which he considered to be 30 days after the date of final inspection for each project.

During his June 25, 2007, testimony, Civitello adjusted his report to reflect Puerto Rico's legal annual interest rate, however, he used 6.5% instead of 6% (Ex. 2a–2c, Civitello 14th TR 6/25/07 pp 94–994).

### 9. Overcharge

Redondo asserts that it was notified of the overcharge in February of 2006, as part of the final liquidation of the project, well after the litigation ensued, and over five years after completion of the project. This even caused the splitting of the case, to have separate hearings for this project. Said final liquidation showed an alleged back charge against Redondo of $1,447,079.71, mostly on the item of unclassified excavations. In other words, the Authority claims that Redondo was overpaid in regard to the volume of earth excavated in the project. It is evident that the Authority fabricated this back charge in order to offset Redondo's claims, in view of the Authority's lack of proof and defenses in this case. The Authority simply could not prove the overcharge. There was no evidence of its calculation and Caraballo's explanation of the same was, not only unintelligible, but unsupported by independent documentary evidence, and not credible (Stmnt. Fct. 457–463). Caraballo's final liquidation and testimony were disputed by the objective testimony of Eng. Campos and his explanation of the difference in alignment of the Ponce–Adjuntas Road's Axis, due to the problem of the control points. Caraballo's determinations were also disputed by the overwhelming documentary evidence about the increase in volume of earth excavated due to the landslides, caused by the Authority's defects in the design of the inclination of the slopes.

Due to said factors, it is impossible to verify the Authority's position just based on the final liquidation, supplied five years after substantial completion. Furthermore, these calculations were performed by the Authority, based on drawings of cross sections performed without Redondo's participation. This was done after the Authority and Caraballo approved Redondo's certifications for payments on a monthly basis, during five years of construction, with a constant review an verification of the same cross sections by Redondo's and the Authority's surveyors, this without any claim of overpayments from the Authority during those five years. Eng. Caraballo and Mr. Civitello explained that Caraballo's calculation were also incorrect because the item of unclassified excavations was paid at two price levels, one portion of the volume excavated at the original price of $4.80 per cubic meter, while another portion was paid at a price of $8.20 per cubic meter. According to

them, there was no way to correlate the volume at the two different prices based solely on the information provided by the final liquidations. This is why the Authority's expert required an *ex-parte* explanation from Caraballo, after the conclusion of all testimonies, because he could not understand the final liquidation based on the information provided by the Authority during trial and tried to rehabilitate Caraballo's dubious testimony. Moreover, notwithstanding the fact that he could not understand Caraballo's final liquidation, Mr. Scott admitted that he did not care to do an independent calculation of Caraballo's determination. The above is on top of the fact that Caraballo's computer was vandalized, and his data about the cross section were lost and had to be reconstructed five years thereafter by Surveyor Rivera Malave, which adds more doubts as to the veracity of his calculations. Therefore, the overpayment was not proved.

**10. Certifications**

Redondo asserts that the PRHTA's bad faith is such, that it has retained the payment of approved certifications for payments, with the excuse that Redondo has not submitted information required to process the final liquidations. Redondo argues that, first, it has taken PRHTA all these years to process the final liquidations, in violation of the Blue Book; second, it was the Authority who put Redondo in the financial position of not being able to pay its creditors, by delaying its claims; and third, that Redondo presented evidence that it submitted all the information required to process the final liquidations for each project (Ex. 35, 66, 98, 135a-e & 229), with the exception of the release from the sureties regarding the performance bonds, and the evidence of payments to the subcontractors. These last two items where not presented, because Redondo was not able to pay its creditors due to its bankruptcy, which was precisely due to the Authority's delays and lack of payment.

**B. PRHTA**

**1. Extended Overhead and Extended Job Site Overhead**

PRHTA asserts that it was stipulated by the parties that none of the five (5) projects were completed at the original estimated completion date. It is also clear that the PRHTA recognized that in all these five (5) projects the owner introduced changes, due to different reasons, and consequently reached agreements with Redondo to compensate Redondo for such additional costs and time for those changes under various extra work orders and agreements. Thus, while it is undisputed that the Eichleay formula is the appropriate method for measuring the amount of recovery of a claim for unabsorbed overhead expenses, it is also undisputed that Redondo's claim did not fully comply with Eichleay's prerequisites for such recovery, when considering not the allegations but the actual evidence presented at trial. 1 *See*, Stipulations No. 31, 65, 84, 99 and 118.

The Court of Appeals for the Federal Circuit has established "two prerequisites to application of the *Eichleay* formula to recover unabsorbed overhead ... (1) that the contractor be on standby and (2) that the contractor be unable to take on other work." *Interstate Gen. Gov't Contractors, Inc. v. West,* 12 F.3d 1053, 1056 (Fed.Cir. 1993).

It asserts that the burden of proof lies squarely on Redondo's shoulders. To be able to even apply the *Eichleay* formula to its home office overhead claims, Redondo had to clearly and convincingly establish that: a. the PRHTA constructively suspended the Work and consequently made Redondo be on standby; and, b. that Re-

dondo was *unable* to take on other work at that time and because of the PRHTA's actions. No such evidence was presented.

## 2. Inefficiencies

PRHTA argues that in proving lost productivity claims, it is necessary to explain the nature of the injury because productivity losses are by definition speculative. This involves focused and straightforward evidence of how the disruptions caused the productivity losses, the extent of these losses, and the monetary damages associated with labor productivity losses. The proof usually consists of job records, fact witnesses, and expert testimony. See, Bramble, Barry B., Callahan, Michael T., Construction Delay Claims, Third Edition, Aspen Law & Business, 2000, p. 5–37.

It also argues that general unsupported statements that the change orders impacted the work do not substitute for proof of actual disruption. Rather, there must be evidence as to the effect the changes had on the job. Bechtel Natl Inc., 90–1 B.C.A. (CCH) at P22,549. See, e.g., Dravo Corp., ENGBCA No. 3800, 79–1 B.C.A (CCH) P13,575 (1978) (loss of productivity not established where no evidence crews were idle or underutilized). A claimant must show not only that the disruption resulted *solely* from the defendant's actions, but claimant must also show the *extent* of the disruption and the harm it caused. No such showings were made by Redondo. Under the case law, there must be contemporaneous documentary evidence of disruptive effects. Claims of disruption must be consistent with information in the Project files. The Project files must show that the change orders were disrupting the Project, even though the ultimate effect may not have been known until after the job was complete. PRHTA concludes that Redondo is not entitled to such claim.

## 3. Insurance and Bond Premiums

PRHTA asserts that Redondo is entitled to the insurance and bonds premiums that it paid additionally but, no evidence was presented.

## 4. Patents and Excise Taxes

PRHTA asserts that the revised Section 107.02 of the Blue Book added a subsection "b" titled Municipal Taxes, which reads as follows: "The Contractor shall pay all excise taxes Imposed by the municipalities on construction projects no later than at the time of the submittal of the first certification of partial payment as per article 109.06. Upon receipt of a certified Invoice or other acceptable evidence of payment by the Contractor, the Authority will reimburse the Contractor as provided below: (1) Form of payment—Payment for the reimbursement of municipal excise taxes paid by the Contractor will be made by an extra work order prepared for this purpose. No payment will be made for markup, administrative or incidental expense, profit, surcharges or any similar charge. (2) Withholding of payments to the Contractor—If at the time of the first certification for partial payment is submitted, the Contractor has not paid the excise taxes, the Authority will retain any monies due or that may become due to the Contractor up to the full amount of the taxes. When the Contractor submits the evidence of payment as per paragraph (1) above, the Authority will return all retained monies.

PRHTA contends that the contracts clearly stated that insurance premiums, bond costs, and municipal taxes are first assessed using the original contract price as the base and paid by the contractor BEFORE the Work actually begins. As also clearly stated in the Blue Book, the contractor is fully responsible for these costs which are not refundable, since they should have been included in the contrac-

tor's bid. Notwithstanding the above, if the final contract price exceeds the original contract estimate by reason of changed or additional work, the contractor might be entitled to a reimbursement for the additional insurance premiums, bond costs, and municipal taxes paid, since those could not *have* been included in the contractor's bid; although the contract documents are silent in this regard. Nevertheless, to be entitled to such reimbursement the contractor must, at the *very* least, submit a certified invoice or other acceptable evidence of having made those payments and no such evidence was provided by Redondo.

## 5. Profit

PRHTA asserts that if the extra work is paid for at unit prices, then Section 104.02 of the Blue Book is controlling and consequently, no additional profit could be assessed to those items. Nevertheless, if the extra work is paid for on a *Force Account basis,* since the payment is set unilaterally by the PRHTA, Section 109.04 of the Blue Book includes an allowance of 20% of profit for labor costs, 15% of profit on the cost of materials and 10% of profit on insurance and taxes paid. It is important to note that these additional payments constitute *full compensation* for all items of expense not specifically designated.

## 6. Liquidated Damages

PRHTA asserts that liquidated damages was part of all the contracts entered with Redondo. Furthermore, that pursuant to the clear and unambiguous terms of Section 108.09(a) of the Blue Book, if Redondo did not complete the Work in the time specified in the contract, or as extended by mutual accord, then the PRHTA was entitled to assess Liquidated Damages. Therefore, for Redondo to be entitled to a disbursement of the withheld Liquidated Damages in Projects AC–019916 and AC–

800135, it bears the burden of proof of establishing that: (a) Redondo timely requested extensions of time in those two (2) projects; and (b) the PRHTA denied the extensions of time, notwithstanding the fact that; (c) Redondo was entitled to those extensions of time.

## 7. Termination of Contract

PRHTA argues that it can determine when in its best interests it can eliminate parts of the work and that it compensated Redondo according to Section 109.05 of the Blue Book, titled, "Payment for Eliminated Items."

On February 8, 2002, PRHTA issued Extra Work Order 12 in the amount of $488,093.12 to compensate Redondo in full for the items presented in the October 25, 1999 claim. Neither Civitello nor Redondo averted or submitted any documentation or analysis that substantiated that Extra Work Order 12 did not fully compensate RCC for the cost it incurred for the eliminated work. Redondo also did not provide evidence to substantiate it's entitlement to an additional $164,627.62 for the eliminated work. Therefore, this claim item must be denied.

## 8. Interest

PRHTA accept that under Rule 44.3 of the Rules of Civil Procedure of Puerto Rico, 32, Redondo is entitled to interest.

## 9. Overcharge

PRHTA asserts that according to Certification Payment No. 57F, dated April 25, 2005, the PRHTA overcompensated Redondo by $1,098,845.94. This final certified payment included increases or decreases in the final value of the work performed on the PonceAdjuntas Project. Certification Payment No. 57F listed 20 contract items regarding the "Work Performed" by Redondo. Of the 20 items

listed, 18 contract items were increased and two contract items were decreased. Contract Items No. 020, *Reinforcing Steel* $2,741.13 and No. 102, *Unclassified Excavation* $772,425.49 were decreased by a total value of $775,166.62. While the remaining increased contract items had an aggregate value of $333,966.52. Therefore, the net value of these items was ($441,200.10). Certification Payment No. 57F showed that PRHTA further adjusted the final certified payment for Material on Site, ($265,540.86) and Extra Retainage ($477,319). As previously stated, Certification Payment No. 57F also showed that PRHTA compensated RCC $85,214.02 for fuel increase in accordance with Special Provision Sections 3.03 and 7.0. 141.

### 10. Nonpayment of Certified Applications for Payment

PRHTA argues that Section 109.06 of the Blue Book states that Partial payments will be made at least once each month as the work progresses; the making of partial payments to the Contractor shall not be construed as an acceptance on the part of the Authority of any part of the work done or material furnished under this contract, but only as payment on account; and that partial payments may be suspended when in the judgment of the Engineer the work has not proceeded according to the terms of the contract. It also asserts that Section 109.09 of the Blue Book: that when the final acceptance of the project has been made as provided in Article 105.16, the Engineer will prepare the final estimate of the work performed; if the Contractor approves the final estimate or files no claim or objection to the quantities therein, within 30 days of receiving the final estimate, the Authority will process the estimate for final payment; however, that the final payment will not be made until the Contractor has filed with the

Authority the consent of the surety to payment of the final estimate and satisfactory evidence by affidavit, or as otherwise required by the Authority, that all his indebtedness by reason of the contract has been fully paid or satisfactorily secured; and that upon final adjudication of the claim, any additional payment determined to be due the Contractor will be placed on a supplemental estimate and processed for payment.

Finally, PRHTA assert that under Section 109.09, if the Contractor has fulfilled all his obligations under the contract but fails to approve the final estimate, the final payment will be released after one year from the date of final acceptance of the work by the Authority and such action shall operate as a release to the Authority as if the Contractor had approved the final estimate.

It contends that Redondo had the burden of establishing its full compliance with the clear and unambiguous language of Section 109.09 of the Blue Book. If all closeout documents were provided and submitted to the PRHTA, after the approval of the final estimate by Redondo, payment was to be made for the sum found to be due after deducting all previous partial payments and all amounts to be retained or deducted under the provisions of the contract.

### IV. *A. Stipulated facts by the parties as to each project and Findings of Fact by the Court*

#### A. *Las Cumbres Avenue—El Capa*

##### i. *Stipulated facts by the parties*

On May 11, 1998, Redondo entered into a $6,182,000.00 contract with the PRHTA, for the construction of Road 199, known as "Avenida Las Cumbres" ("Project AC–019916"). The Project AC–019916 was to

be completed in 360 days, i.e., on June 9, 1999.

As a condition to bid for the project, the contractor agreed that it could not work during the first 60 days between stations 73 + 00 to 79 + 00 because PRHTA had not acquired all the properties and thus, the Contractor did not have full access to this area. Sections 73 + 00 to 79 + 00 made up 34% of the project area.

Redondo started the project on June 15, 1998. By June 9, 1999, the access problem had not been resolved and other acquisitions were necessary to start working in sections 79 + 00 to 81 + 20 and 87 + 48 to 90 + 86.

There were changes in design to correct vehicular flow in the residential area of Urbanizacion Colinas de Fairview; and changes in site conditions in sections 83 + 00 to 85 + 00, where solid rock and a portable water tank were encountered.

On December 16, 1999, RGG and PRHTA executed a first settlement agreement that addressed a claim from RGG for delays on the project. The PRHTA extended the date of substantial completion of the original contract in 365 days, until May 30, 2000. Additionally, PRHTA also agreed to pay Redondo $980,000.00 dollars for inefficiencies, inflation, Redondo's subcontractor delays, and any other delay that may be known or unknown up to that date.

Prior to the December 16, 1999 agreement, the PRHTA had submitted two change orders and five extra work orders and between December 16, 1999 and September 13, 2000, the PRHTA had issued five extra work orders and two change orders.

On June 26, 2000, Redondo submitted its second claim.

Between September 13, 2000 and September 19, 2000, the PRHTA had issued one extra work order and one change order.

On September 19, 2000, PRHTA for the second time, extended the date for substantial completion until October 15, 2000, except for a tract across from the "Monte Atenas" development, which date was extended until October 31, 2000.

According to the second extension agreement, the contract time was extended because of the discovery of an existing 20 inch potable water pipe in various locations and depths which affected the construction of a MSE wall; and the redesign of the new entrance and exit ramps to the Monte Atenas development because the existing elevations shown on the drawings were different from the actual elevation in the field. Also, in the second extension agreement, the parties executed the following agreement: (a) that Redondo would submit a schedule to substantially complete the project on October 15, 2000. This completion date did not include work in front of the Monte Atenas residential and commercial complex; (b) that no additional time extension except for the items specified in Article 2 of the agreement; (c) that the PRHTA could assess liquidated damages if Redondo did not complete the Project by October 31, 2000; (d) that the PRHTA agreed to pay Redondo $1,500 per day for extended overhead on an interim basis until an audit was performed at the completion of the project; (e) that by October 15, 2000, the new substantial completion date, the public could use the new Las Cumbres roadway; and (f) that the PRHTA would return $180,000.00 in liquidated damages it assessed on the project.

Between September 19, 2000 and April 17, 2001 the PRHTA had issued five extra work orders and five change orders.

On October 18, 2000, RGG submitted a further claim for time extension and added

costs from those discussed in its June 26, 2000 letter.

The PRHTA issued two (2) force account orders, which had added supplements. Force Account Order No. 1, contained in EWO No. 4 issued on December 29, 1998, paid RCC $50,000.00. On January 25,2001, the PRHTA issued EWO No. 7, a first supplement to EWO No. 4, paid RCC $75,000. On September 20, 2000, a second supplement to Force Account No. 1 was issued as EWO No. 13, paid RCC $55,000. Force Account Order No. 2, contained in EWO No. 11, was issued on August 4, 2000, paid RCC $220,000.

On January 2, 2001, PRHTA and RCC agreed to the 92–day time extension, which revised the completion date from October 31, 2000 to January 31, 2001 ("the third extension agreement").

Extra Work Order No. 15, issued on October 24, 2000, paid RCC $154,061.00, for the difference in extended overhead costs after the final audit was performed for the period from December 16, 1999 to May 30, 2000. Extra Work Order No. 16, paid RCC $229,500.00 for extended overhead for the period May 30, 2000 to October 31, 2000 at $1,500 per day. EWO No. 17 (issued on October 24, 2000), paid RCC $39,602 for additional work for temporary relocation of fiber optic cables (PRTC) due to rock cutting. On December 13, 2000, PRHTA issued EWO No. 18, a first supplement to Force Account Order No 2, paid RCC $250,000 for additional labor, material, and equipment costs to complete added work. On April 17,2001, PRHTA issued EWO No. 20, a second supplement to Force Account Order No. 2, paid RCC $300,000. Change Order No. 4 (issued on July 11, 2000) and Change Order No. 7 (issued on September 14, 2000), paid Redondo for further unclassified excavation and rock excavation.

The PRHTA conducted the final inspection of the project on July, 10, 2001. The PRHTA imposed Redondo liquidated damages from January 31, 2001 until February 24, 2001, for a total amount of $41,432.75.

By May 31, 2001 the PRHTA had requested Redondo to perform additional work through force account.

An independent audit report was performed on May 20, 2003 by Rafael Perez Villarini.

The PRHTA concluded the final liquidation of the project on October 19, 2005.

*ii. Findings of Fact by the Court*

The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $514.00 per diem and for extended job site overhead $2,009.00 per diem (docket # 363).

In the first settlement agreement (Plaintiff's Exhibit # 6 *Id.* 1) dated December 19, 1999, the parties accorded that Redondo was to paid the amount of $30,000.00 up to the total aggregate of $300,000.00 for the 10 months for extended main office overhead and for extended job site overhead. Then, an audit would be conducted of the real cost incurred by the contractor and the payment would be adjusted, and the difference if any would be paid.

In the second settlement agreement (Plaintiff's Exhibit # 6 *Id.* 2) dated September 13, 2000, the agreement was that the agency would pay the contractor $1,500.00 per day from May 30, 2000, until the completion of the project. Then, an audit would be conducted of the real cost incurred by the contractor for said concept, and the payment would be adjusted and the difference if any would be paid.

In the first settlement agreement, PRHTA paid $470,606.00 for the inefficiency claim (Exhibit 6 *Id.* 1).

The first draft dated September 13, 2000 (Exhibit 6 *Id.* 2 and *Id.* 3), stated that "the contractor will submit a work schedule to substantially complete the project on October 31, 2000, no claims for inefficiency will be made for this conceded period of time."

The second draft of the settlement agreement the previous sentence was edited to: "the contractor will submit a work schedule to substantially complete the project on October 31, 2000, not including the tract in front of the Monte Atenas residential and Commercial development according to annex 1."

Redondo used two different methods to calculate inefficiency The first is the Direct Cost Comparison (Plaintiff's Exhibit # 6, page 12) for a total amount of $2,957,405.00 and the second method called the Direct Comparison Production Rates (Plaintiff's Exhibit # 6, page 14) for a total amount of $2,667,904.80.

PRHTA's letter indicates that the substantial completion was on February 24, 2001 (Plaintiff's Exhibit # 24).

Civitello testified that he did not review any documents that substantiate the amount paid nor does he know that Redondo actually paid them (TR. 3/19/2007 p. 244).

The Joint Informative Motion in Regard to Stipulated Facts and Table of Claims with Amounts Requested and Recognized (docket # 363), PRHTA calculated 15% profit in all the claims.

## B. *Rio Grande de Loiza Bridge*

### i. *Stipulated fact by the parties*

On April 11, 1996 Redondo entered into a $12,250,000.00 contract with the PRHTA for the construction of a bridge over "Rio Grande de Loiza" and an access to the Gurabo–San Lorenzo Road. The project was to begin on April 22, 1996 and to be completed in 720 calendar days, i.e., on April 12, 1998.

On July 17, 1996 the PRHTA approved a "Value Engineering" proposal submitted by Redondo, in which the contractor, at the PRHTA's request, submitted an alternative to build in less time and with an economy or lower cost to the PRHTA.

Redondo's proposal advanced the date of substantial completion to January 12, 1998.

Redondo substantially completed the project on April 15, 1998.

The PRHTA imposed liquidated damages to Redondo in the amount of $185,069.00, from January 12,1998, to April 15, 1998.

On June 12, 1998, Redondo submitted a claim for an extension of time for 134 days.

On June 16, 1998, PRHTA evaluated RCC's claim and found it was due a time extension of 93 days.

As a result of the 93–day time extension, the Substantial Completion date was revised from January 12, 1998 to April 15, 1998.

Redondo submitted various claims for delays, extended overhead for the time extension of 93 days and the reimbursement of the liquidated damages.

The Independent Accountant's Report of May 20, 2003 calculated a total of $180,513.00 for extended overhead for 93 days.

The total additional cost of the contract was $5,376,903.40.

### ii. *Findings of Fact by the Court*

The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $464.00 per diem and for extended job site overhead $1,477.00 per diem (docket # 363).

PRHTA paid Redondo $132,000.00 for what it was labeled extended overhead (Plaintiff's Exhibit # 54).

Scott admitted that Extra Work Order 18, was not for overhead (TR. 11/6/2008 pp. 374–376) design.

PRHTA recognizes the delays of the projects and accepts responsibility (Plaintiff's Exhibit # 48). On the other hand, Civitello, explains in detail how Redondo arrived at the figure and that it was using the same method used to calculate the Las Cumbres Avenue Project (Exhibit # 2).

### C. Kennedy Avenue—Caparra Interchange

#### i. Stipulated facts by the parties

On October 31, 1997, Redondo entered into a contract with the PRHTA for the construction of an expansion of 1.10 Kms. of PR Road–2, known as "Kennedy Ave.", between Kennedy and De Diego Ave. The contract for $6,375,000 included improvements to Caparra Interchange, Phase 1 B, De Diego Expressway and Kennedy Avenue, highways PR–22 and PR–2 Municipality of San Juan, Puerto Rico. The project was to be completed in 365 calendar days, i.e., on November 16, 1998.

On August 25, 1998, PRHTA notified Redondo of the elimination of all work from progressive 23 + 39 (line 25B) to 25 + 40 (line 2SB) and from progressive 5 + 40 (line 2) to progressive 29 + 75 (line 2).

On May 17, 1999, the PRHTA granted an extension of time of 163 calendar days to the original contract, moving the date of substantial completion to April 28, 1999.

On October 25, 1999, Redondo submitted to the PRHTA a claim for delays, extended main and job office overhead and damages and expenses.

On October 28, 1999, PRHTA determined the project was substantially completed on April 28, 1999.

On February 8, 2002, the Authority issued Extra Work Order Num. 12, for the payment of $488,093.12.

On August 5, 2002, the PRHTA issued and approved certification No. 19 for the payment of EWO 12; and certification No. 20 F, for some pending work and materials, both totaling, $515,229.04.

The settlement documents were completed on November of 2002.

Redondo noted an objection to the PRHTA's final determination on certification 20 F.

Pursuant to a court order, the PRHTA deposited with the Clerk of the Court the amount of $503,203.28 for certifications for payment No. 19 and No. 20F.

Redondo has not accepted the PRHTA's determinations on the final liquidation.

#### ii. Findings of Fact by the Court

The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $500.00 per diem and for extended job site overhead $1,989.00 per diem (docket $363).

PRHTA gave Redondo an extension of time in the letter dated May 17, 1999 (Exhibit 73).

The final date was moved to April 28, 1999, 527 days (Exhibit 73).

Scott's expert report for the PRHTA, asserted that although he could not evaluate this claim due to the lack of sufficient project documentation, at the end of his calculation of how much PRHTA owes Redondo, it includes the amount claimed by Redondo due to the termination of the contract (Defendant's Exhibit E, Scott's Expert Report, page 57–58).

### D. *Ponce—Adjuntas—PR–19*

#### i. *Stipulated Facts by the Parties*

On October 30, 1996, Redondo entered into a $21,820,00.00 contract with the PRHTA which included the construction of 3.5 kilometers of paved highway, drainage improvements, pavement markings, retaining walls, and the relocation of utilities and sections of PR Road 10 and PR Road 515.

The project was to be completed on November 2, 1999, for a total of 1,080 calendar days.

In this project PRHTA retained a Geological Technical Consultant, Dr. Bernard, who made recommendations for the redesigned the cross sections due to the problems of the landslides and instability of the terrain.

During the prosecution of the Work, the PRHTA approved 15 Change Orders totaling $8,038,568.58 and 20 Extra Work Orders totaling $12,061,028.79. As a result, the original contract value increased from $21,820,000 to $41,919,597.37.

The PRHTA granted a first extension of time of 253 calendar days, extending the completion date from November 2, 1999 to July 12, 2000. This extension was granted for all delays that could be attributed to the PRHTA for the additional unclassified excavation work to stabilize the slopes in the area where substantial cuts were made. Then, PRHTA granted a third extension of time of 19 calendar days, extending the completion date from September 30, 2000 to October 19, 2000. This time extension covered the 19 day delay related to the construction of the Jersey Barrier between Stations 1497 + 80 and 1500 + 40. This construction of the Jersey Barrier was performed by Redondo in accordance with the force account contract provisions.

Redondo is claiming the extended overhead costs under the second and third time extensions, but not under the first time extension since the agreed price for the activity during the first time extension included the extended overhead expense.

Redondo substantially completed the project on October 19, 2000.

On March 14 and April 22, 2002, the PRHTA approved certifications for payment no. 55 and no. 56 for a total amount of $179,387.60.

In Certification for Payment No. 57F, PRHTA approved a final fuel price adjustment of $85,214.02.

The Independent Accountant's Report issued on May 20, 2003 calculated a total of $486,684.00 for extended overhead for 99 days.

Regarding the payment of municipal taxes due for the Ponce–Adjuntas Project, as awarded, on May 28, 1997, Redondo paid to the Municipality of Ponce the amount of $200,000.00. From June 12, 1997 until March 12, 1998 RCC paid to the Municipality of Ponce ten (10) payments of $49,355.80 each, for a total of $493,558.00. The total amount paid by RCC for municipal taxes for the Ponce–Adjuntas Project, as awarded, was $693,558.00.

PRHTA issued Change Orders and Extra Work Orders that increased the original contract estimate on the Ponce–Adjuntas Project.

On February 22, 2001, regarding the payment of Municipal Taxes (Arbitrios) due to an increase in the original contract estimate, Redondo additionally paid to the Municipality of Ponce $124,744.91.

On December 29, 2005, the PRHTA deposited with the Clerk of the Court the amount of $179,387.60 for certifications for payment No. 55 and No. 56.

PRHTA acknowledged that RCC was entitled to $35/lm to install 12–gage guardrail material and $40/lm to install 10–gage

material. Thus, RCC would be entitled to the payment of $111,176.50, or 2,753.91m of 12-gage material at $35/lm plus 369.751m of 10-gage material at $40/lm.

### ii. Finding of Fact by the Court

In the letter dated November 28, 2001, Redondo has the right to claim 99 days of extended overhead (Plaintiff's Exhibit # 123).

Redondo provided evidence of the insurance paid in the amount of $106,190.00 (Plaintiff's Exhibit 136e).

Redondo provided copy of all the checks made to the order of Municipality of Ponce, for a total of 19 checks (Plaintiff's Exhibit # 135e and 135f), all with different check numbers and dates.

The total amount of all the checks made by Redondo, made to the order of Municipality of Ponce is $1,082,651.56, for the total of the 19 checks (Plaintiff's Exhibit 135e and 135f) and the check made payable to the College of Engineers was for the total of $21,823.00 (Plaintiffs Exhibit 135c and 135d).

Redondo and PRHTA stipulated that the amount that is owed to Redondo is $85,214.02 (docket # 363).

Redondo and PRHTA stipulated that the amount that is owed to Redondo is $111,176.50 (docket # 363).

### E. Third Millennium Park

### i. Stipulated facts by the Parties

On November 17, 1998, Redondo entered into a $21,696,000.00 contract with the PRHTA for the construction of a park along the "Escambron" beach in San Juan, Puerto Rico; which included the installation of retaining walls, pedestrian walkways, sidewalks, and lifeguard towers, the demolition of existing structures, electrical and mechanical work, landscaping, interior fit-out of the restaurant and administration office, and other miscellaneous work.

The project started on December 7, 1998, and the original completion date was December 2, 1999, for a contract time of 360 calendar days.

On August 27, 1999, PRHTA and Redondo executed a settlement agreement that extended the contract time from December 2, 1999, to December 17, 1999, 15 calendar days. Article number 5 of the Settlement agreement stated: "The contractor will not work in the project from December 18, 1999, up to and including January 10, 2000." Article 3 of the Settlement Agreement of August 27, 1999 stated that PRHTA could assess liquidated damages in the amount of $600 per day if Redondo did not complete the project by March 10, 2000.

Article 8 of the Settlement Agreement of August 27, 1999, stated that PRHTA could assess contractual penalties in the amount of $4,000 per day if RCC did not achieve substantial completion by December 17, 1999.

During the project, five Change Orders ("C.O.") and seventeen Extra Work Orders ("E.W.O.") were issued.

Extra Work Orders no. 9 through no. 16 issued after April 3, 2000 paid RCC $2,041,007 for the additional work requested by PRHTA.

PRHTA determined that Redondo achieved substantial completion on December 31, 1999.

The PRHTA applied Redondo liquidated damages in the amount of $142,800.00, for the period between March 11, 2000 and November 3, 2000.

EWO no. 16 was approved on July 16, 2001.

On October 10, 2000 Redondo claimed extended overhead from March 10, 2000 to

November 8, 2000, a total of 243 calendar days.

After a final inspection, the PRHTA determined that the project completion date was November 3, 2000.

### ii. Findings of Fact by the Court

The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $561.00 per diem and for extended job site overhead $1,857.00 per diem (docket # 363).

On the other hand, both Redondo's expert witness and PRHTA's expert witness (Plaintiff's Exhibit 2 and Defendant's Exhibit E), concluded that Redondo is entitled to 607 days for extended main office overhead and for extended job site overhead.

On the other hand, in Plaintiff's Exhibit 218, the settlement agreement states that the $750,00.00 would be paid for the concept of acceleration of work.

As per Plaintiff's Exhibit # 227 in the contract final report PRHTA retained $162,500.00.

The evidence of the municipal taxes paid was for the amount of $37,811.00 (Plaintiff's Exhibit 228).

A check made payable to the College of Engineers was for the total of $21,703.00 (Plaintiffs Exhibit 228).

## V. DISCUSSION

### A. Applicable Law

■ "Property and contract rights implicated in bankruptcy disputes are determined in accordance with state law." *In re Ward,* 194 B.R. 703, 711, fn. 21 (Bankr. D.Mass.1996) (citing *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) and *Ralar Distributors, Inc. v. Rubbermaid, Inc. (In re Ralar Distrib., Inc.),* 4 F.3d 62, 67–68 (1st Cir. 1993)). Thus, the Laws of the Commonwealth of Puerto Rico ("Civil Code of 1930") govern the breach of contract and damages claims in the present case.

### 1. Contracts with the Government of Puerto Rico

In *Fernandez & Gutierrez v. Municipio de San Juan,* the Puerto Rico Supreme Court indicated that when a contract involves the use of public funds or goods, the rigorous application of all norms regarding contracting and disbursement of those funds is essential, in order to protect the public interest and funds. *Fernandez & Gutierrez v. Municipio de San Juan,* 99 PRSC 26, 147 P.R. Dec. 824, 829 (1999).

The Puerto Rico Legislature in Art. 1 of Law Num. 18 of October 30, 1975, supplies the basic limitation in appropriations and contracting, reading as follows:

> The departments, agencies, instrumentalities, offices and all other bodies, and the municipality of the Commonwealth of Puerto Rico, with no exception whatsoever; shall keep a registry of all contracts executed, including amendments thereto, and shall remit a copy thereto to the Office of the Comptroller within fifteen (15) days following the date of the execution or the amendment of the contract.

■ P.R. Laws Ann. tit. 2, § 97 (2004). This presupposes that when a government agency or municipality is a party to a contract or an amendment thereto, the contract or amendment must be reduced to writing, executed by both parties, and registered with the Office of the Comptroller. *Las Marias v. Municipio de San Juan,* 2003 PRSC 121, 4. The Supreme Court of Puerto Rico alluded to the efficacy of said statute in *Fernandez & Gutierrez v. Municipio de San Juan,* and added that it "reflects the legislative intent of creating a mechanism of checks and publicity of con-

tracts executed by the municipalities, which is of constitutive nature with respect to efficacy." *Fernandez & Gutierrez v. Municipio de San Juan,* 99 PRSC 26, 147 P.R. Dec. 824, 830 (1999).

■ On the other hand, it is well established in Puerto Rico that the contracts between the government or its municipalities and a private party, are subject to the same regulations and set of doctrines as if the contract were between private parties. *Municipio de Mayaguez v. Lebron,* 2006 PRSC 70, 2. *See also, Campos Ledesma v. Cia. Fom. Ind.,* 2001 PRSC 1.

### 2. *Contracts in general*

Contracts in Puerto Rico are governed by the Puerto Rico Civil Code of 1930. The Civil Code in article 1044 states that: 35 "[t]hose obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." *Lopez Torres v. Gonzalez Vazquez,* 2004 PRSC 172, 2. *See also* P.R. Laws Ann. tit. 31, § 2994 (1990).

■ In Puerto Rico, the law recognizes that the contracting parties may make any agreement and "establish the clauses and conditions, which they may deem advisable, provided that they are not in contravention of the law, morals, or public order." *Lopez Torres v. Gonzalez Vazquez,* 2004 PRSC 172, 2. *See* P.R. Laws Ann. tit. 31, § 3372 (1990). Contracts are perfected by the mere consent of the parties, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which are in accordance with good faith, use and law. *Lopez Torres v. Gonzalez Vazquez,* 2004 PRSC 172, 2. *See also* P.R. Laws Ann. tit. 31, § 3375 (1990).

### 3. *Interpretation of Contracts in Puerto Rico*

The Puerto Rico Civil Code of 1930, Articles 1233 through 1250, regulates contract interpretation. *See* P.R. Laws Ann. tit. 31, § 3471 through 3479 (1990). In *Municipio de Mayaguez v. Lebron,* the Puerto Rico Supreme Court stated that the target in contractual interpretation is to determine what are the real and common intentions of the contracting parties. *Municipio de Mayaguez v. Lebron,* 2006 PRSC 70, 4.

■ In *Marcial v. Tome,* 144 P.R. Dec. 522 (1997), the leading case in contracts interpretation, cited throughout the opinion of *Municipio de Mayaguez,* 2006 PRSC 70, the Puerto Rico Supreme Court held that:

> [a]lthough the starting point of contract interpretation must be the expressions contained in the words, the trier cannot stop at the literal sense, but must fundamentally investigate the intent of the parties and the spirit and purpose of the transaction, as they are inferred from the overall conduct of the interested parties and from the concurring circumstances that may contribute to an adequate investigation of the will of the executing parties. *Coop. La Sagrada Familia v. Castillo,* 107 D.P.R. 405, 417 [7 P.R. Offic. Trans. 449, 461] (1978). See: *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 69–70 [14 P.R. Offic. Trans. 86, 94–95] (1983); *Merle v. West Bend Co.,* 97 D.R.R. 392, 399 (1969).

*Marcial v. Tome,* 144 P.R. Dec. at 537. "To judge the intention of the contracting parties, all circumstances showing the will of the parties must be examined." *Id.* at 538. *See also* P.R. Laws Ann. tit. 31, § 3472 (1990). Specifically, special attention must be paid to "their acts, previous

to, contemporaneous with, and subsequent to the execution of the contract." *Marcial v. Tome,* 144 P.R. Dec. at 538. The Court also held that a Court should consider "the occasion, the circumstances, the persons involved, and the agreement they intended to negotiate." *Id.*

A. *Project Ave. Las Cumbres—Contract AC 019916*

In the present case seven claims are still pending. Redondo claims: 1. extended main office overhead and extended job site overhead, 2. inefficiency, 3. liquidated damages, 4. Insurance and Bonds Premiums, 5. Profit (15%), 6. Unpaid application for payment No. 35F and 7. Interest at 6%.

1. *Extended main office overhead and extended job site overhead*

Redondo is claiming $375,734.00 for extended main office overhead and $1,468,579.00 for extended job site overhead, for a total of $1,844,313.00 for 731 days. PRHTA is accepting $79,156.00 for extended main office overhead and $309,386.00 extended job site overhead, for a total of $388,542.00 for 154 days. The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $514.00 per diem and for extended job site overhead $2,009.00 per diem. The only difference is the amount of days calculated by Redondo and by PRHTA.

PRHTA asserts that it only owes 154 additional days for extended main office overhead and for extended job site overhead. It contends that it paid for extended overhead in various checks and what was pending was the additional days that corresponds to the period of May 30, 2000 to October 31, 2000. On the other hand, Redondo calculated 731 additional days, that corresponds from the first extension of time given by PRHTA to the conclusion of the project, from June 9, 1999 to May 31, 2001.

The project was started on June 15, 1998, it was suppose to be finished on June 9, 1999, 360 days. In the first settlement agreement the final date was moved to May 30, 2000. In the second agreement the parties agreed that the final date was May 31, 2001.

In the first settlement agreement (Plaintiff's Exhibit # 6 *Id.* 1) dated December 19, 1999, the parties accorded that Redondo was to paid the amount of $30,000.00 up to the total aggregate of $300,000.00 for the 10 months for extended main office overhead and for extended job site overhead. Then, an audit would be conducted of the real cost incurred by the contractor and the payment would be adjusted, and the difference if any would be paid.

In the second settlement agreement (Plaintiff's Exhibit # 6 *Id.* 2) dated September 13, 2000, the agreement was that the agency would pay the contractor $1,500.00 per day from May 30, 2000, until the completion of the project. Then, an audit would be conducted of the real cost incurred by the contractor for said concept, and the payment would be adjusted and the difference if any would be paid.

In the present case, PRHTA asserts that it paid $229,000.00 for the extended overhead, on the other hand, Redondo asserts that PRHTA paid $683,561.00 for the extended overhead. Redondo calculated 731 days, that was from the first extension of time until the conclusion of the project. The audit was never conducted as prescribed in the two settlement agreements. The parties stipulated (Docket # 363) that for the extended main office overhead Redondo would be pay $514 per day, and for the extended job site overhead $2,009.00 per day.

■ The Court concludes that Redondo is entitled as per the two settlement agreements to the extended main office overhead and the extended job site overhead, from the first extension of time given which was from June 9, 1999 to May 31, 2001, for a total of 731 days, minus the overhead already paid by PRHTA, which was $683,561.00.

| | | | |
|---|---|---|---|
| Extended Main Office Overhead | $ 514 × 731 = | $ 375,734.00 |
| Extended Job Site Overhead | $2,009 × 731 = | $1,468,579.00 |
| Paid to Redondo | | -$ 683,561.00 |
| Total that PRHTA owes to Redondo | | $1,160,752.00 |

## 2. Inefficiency

■ PRHTA contends that in order for Redondo to be entitled to inefficiency Redondo had to prove: 1. PRHTA breached the contract or was directly responsible to Redondo for the alleged disruption (liability), 2. that the disruptions were the proximate cause of the loss of productivity or inefficiency and that 3. Redondo suffered a quantifiable increase in its actual cost for the project (damages) which was not compensated by PR in the change orders or the Extra Work Orders issued. Redondo avers that he used the total cost method to calculate inefficiency for this project because of the extreme circumstances, which extended 300% the original time of the project. He avers that this was the only method that could really determine the damage to the company. Redondo avers that in Tab 9 of Exhibit 6, there is a drawing that explains the damages produced on the project; it is a drawing of the whole highway, showing the areas supposed to be available to be worked and the areas that could not be worked, either because the right of way was not acquired or because there were different situations that prevented Redondo from working.

In the first settlement agreement, PRHTA paid $470,606.00 for the inefficiency claim (Exhibit 6 *Id.* 1). Then, Redondo offered into evidence two drafts of the second settlement agreement. The first draft dated September 13, 2000 (Exhibit 6 *Id.* 2 and *Id.* 3), stated that "the contractor will submit a work schedule to substantially complete the project on October 31, 2000, no claims for inefficiency will be made for this conceded period of time." On the other hand, in the second draft of the settlement agreement the previous sentence was edited to: "the contractor will submit a work schedule to substantially complete the project on October 31, 2000, not including the tract in front of the Monte Atenas residential and Commercial development according to annex 1."

The documentary evidence provided by Redondo demonstrates that the inefficiency claim was from the beginning of the project, a claims that was to be included and contemplated, all throughout the project. In the first settlement agreement, PRHTA paid $470,606.00 for inefficiency and in the second, PRHTA did not include the inefficiency because later Redondo could claim it. PRHTA can not argue against its own acts, it paid inefficiency that was clearly contemplated from the beginning.

Redondo used two different methods to calculate inefficiency The first is the Direct Cost Comparison (Plaintiff's Exhibit # 6, page 12) for a total amount of $2,957,405.00 and the second method called the Direct Comparison Production Rates (Plaintiff's Exhibit # 6, page 14) for a total amount of $2,667,904.80.

In the joint stipulated facts Redondo chose the first method. The Court concludes that Redondo is entitled to the inefficiency claim. The Court will concede the second amount the Direct Comparison Production Rates (Plaintiff's Exhibit # 6, page 14) for a total amount of $2,667,904.80.

### 3. Liquidated damages

■ PRHTA fixed the completion date of the project for January 31, 2001 and if the project was not completed by such date, then PRHTA could retain liquidated damages. PRHTA determined that the project was substantially completed on February 24, 2001. Redondo did not demonstrate that it completed the project on January 31, 2001. On the contrary, Redondo failed to achieve substantial completion by January 31, 2001 and was not granted an extension of time. PRTHA retained $41,432.75 for the 23 days. PRHTA's letter indicates that the substantial completion was on February 24, 2001 (Plaintiff's Exhibit # 24). Thus, the Court concludes that PRHTA does not have to refund any amount to Redondo for the concept of liquidated damages.

### 4. Insurance and Bonds Premiums

■ Redondo is claiming $126,736.06. Redondo did not present evidence that demonstrates what amount it paid for insurance and bonds. Furthermore, Civitello testified that he did not review any documents that substantiate the amount paid nor does he know that Redondo actually paid them (TR. 3/19/2007 p. 244). Thus, the Court will not award an amount.

### 5. Profit (15%)

■ Redondo avers that it is entitled to 15% because it is reasonable and because it has been part of all the contracts that it signed with PRHTA. Civitello agrees with Redondo, that 15% is reasonable within the construction industry. PRHTA argued that in the Blue Book different percents apply to the different claims and Scott asserted that for the claims presented by Redondo, no profit should be applied, only for the cost of additional contract work, which was not the case.

On the other hand, in the Joint Informative Motion in Regard to Stipulated Facts and Table of Claims with Amounts Requested and Recognized (docket # 363), PRHTA calculated 15% profit in all the claims, therefore stipulating that a 15% profit could be granted to Redondo.

The Court concludes that Redondo and PRHTA stipulated in the Joint Informative Motion in Regard to Stipulated Facts and Table of Claims with Amounts Requested and Recognized (docket # 363), that 15% of profit could be granted to Redondo.

### 6. Unpaid Application for Payment no. 35F

■ Redondo had the burden of establishing its full compliance with the clear and unambiguous language of Section 109.09 of the Blue Book. If all closeout documents were provided and submitted to the PRHTA, after the approval of the final estimate by Redondo, payment was to be made for the sum found to be due after deducting all previous partial payments and all amounts to be retained or deducted under the provisions of the contract.

PRHTA does not discuss why it does not owe this amount to Redondo, when all the project were completed years ago. Redondo asserts that PRHTA retained the payment of approved certifications for payments, with the excuse that Redondo has not submitted information required to process the final liquidations. Redondo contend that, it has taken the Authority all these years to process the final liquidations, in violation of the Blue Book; secondly, that the Authority was the one that placed Redondo in the financial position of not being able to pay its creditors, by delaying its claims; and thirdly, Redondo presented evidence that it submitted all the information required to process the

final liquidations for each project (Ex. 35, 66, 98, 135a-e & 229), with the exception of the release from the sureties regarding the performance bonds, and the evidence of payments to the subcontractors because Redondo was not able to pay its creditors due to its bankruptcy, which was precisely due to the Authority's delays and lack of payment (Stmnt. Fct. 82 & Redondo 3rd 176–177 & 4th 62–63).

The Court concludes that Redondo is entitled to collect the certifications that were not paid by the PRHTA because all the projects were completed years ago.

## 7. Interest

Rule 44.3 of the Rules of Civil Procedure of Puerto Rico, 32 L.P.R.A. Ap. III R. 44.3, states that when the defendant is the Commonwealth of Puerto Rico, agencies, instrumentalities or officers acting in their official capacity, the court will also impose on the party that has acted rashly the payment of interest at the rate fixed by the Finance Board of the Office of the Commissioner of Financial Institutions which is in effect at the moment the judgment is pronounced, from the time the cause of action arises in every case of collection of money and from the time the claim is filed in actions for damages until the date judgment is pronounced. The current legal interest is 6%. The Court concludes that Redondo is entitled to 6% interest.

## Summary

| | | |
|---|---|---|
| 1. | Extended Main Office/ Job Site Overhead | $1,160,752.00 |
| 2. | Inefficiency | $2,667,904.80 |
| 3. | Liquidated Damages | $ 0.00 |
| 4. | Insurance and Bonds Premiums | $ 0.00 |
| 5. | Profit | $ 574,298.52 |
| 6. | Unpaid Application for Payment No. 35F | $ 103,872.97 |
| | TOTAL | $4,506,828.29 |
| 7. | Plus Legal Interest 6%. | |

### B. Contract AC 020303 · Rio Grande de Loiza Bridge

In the present case six claims are still pending. Redondo claims: 1. Extended main office overhead and Extended job site overhead, 2. Inefficiency, 3. Insurance and Bonds Premiums, 4. Profit, 5. Unpaid Application for Payment No. 15F and 6. Interest.

### 1. Extended main office overhead and 1a. extended job site overhead

Redondo is claiming $43,152.00 for extended main office overhead and $137,361.00 for extended job site overhead, for a total of $180,513.00. PRHTA is accepting $48,513.00 for both the extended main office overhead and the extended job site overhead. The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $464.00 per diem and for extended job site overhead $1,477.00 per diem. The only difference is that PRHTA asserts that it paid Redondo $132,000.00 for the extended overhead and Redondo does not concede that PRHTA paid that amount. The amount of days to be calculated is 93, same days calculated by Redondo and PRHTA.

In the present case, PRHTA argues that according to Plaintiff's Exhibit # 54, it paid Redondo $132,000.00 for the extended overhead. On the other hand, Scott admitted that Extra Work Order 18 was not for overhead (TR. 11/6/2008 pp. 374–376). The Court concludes that Redondo is entitled to extended overhead for 93 days and that the $132, 000. 00 of the Extra Work Order 18 was not related to overhead.

| | | | |
|---|---|---|---|
| Extended Main Office Overhead | $ 464 × 93 = | $ 43,152.00 |
| Extended Job Site Overhead | $1,477 × 93 = | $ 137,361.00 |
| Total that PRHTA owes to Redondo | | $ 180,513.00 |

## 2. Inefficiency

Scott asserts that Redondo provided a basis for calculation of its inefficiency costs. It states that the table was apparently comparing budgeted versus actual material, equipment, and labor production rates and that the approach was the same used by Redondo for the Las Cumbres Avenue Project. Redondo did provide evidence as to the delays attributable to PRHTA. PRHTA recognizes the delays of the projects and accepts responsibility (Plaintiff's Exhibit # 48). On the other hand, Redondo Civitello, explains in detail how Redondo arrived at the figure and that it was using the same method used to calculate the Las Cumbres Avenue Project. The Court gives credibility to Redondo regarding this project because of the delays caused by PRHTA.

The Court concludes that Redondo is entitled to inefficiency claim using second amount Direct Comparison Production Rates (plaintiff's Exhibit # 6, page 14) for a total amount of $900,401.19.

## 3. Insurance and Bonds Premiums

Redondo is claiming $146,042.69. Redondo did not present evidence that demonstrates what amount it paid for insurance and bonds. Thus, the Court will not award an amount.

## 4. Profit (15%)

Same as the section entitled: Profit, *supra*, discussed in the Las Cumbres Avenue Project.

## 5. Unpaid Application for Payment no. 35F

Same as the section entitled: Unpaid Application for Payment, *supra*, discussed in the Las Cumbres Avenue Project.

## 6. Interest

Same as the section entitled: Interest, *supra*, discussed in the Las Cumbres Avenue Project.

### Summary

| | | |
|---|---|---|
| 1. | Extended Main Office/ Job Site Overhead | $ 180,513.00 |
| 2. | Inefficiency | $ 900,401.19 |
| 3. | Insurance and Bonds Premiums | $ 0.00 |
| 4. | Profit | $ 162,137.12 |
| 5. | Unpaid Application for Payment No. 35F | $ 15,423.82 |
| | TOTAL | $1,258,475.13 |
| 6. | Plus Legal Interest 6%. | |

### C. Contract AC 220095 Kennedy Ave.

In the present case five claims are still pending. Redondo claims: 1. Extended main office overhead and Extended job site overhead, 2. Termination of contract, 3. Profit, 4. Interest 5. Interest for Application for Payment No. 19 and 20F.

## 1. Extended main office overhead and extended job site overhead

Redondo is claiming $81,500.00 for extended main office overhead and $324,207.00 for extended job site overhead, for a total of $405,707.00. PRHTA is accepting $21,500.00 for extended main office overhead and $85,527.00 extended job site overhead, for a total of $107,027.00. The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $500.00 per diem and for extended job site overhead $1,989.00 per diem. The only difference is the amount of days calculated by Redondo and by PRHTA. PRHTA asserts that it only owes 43 additional days for extended main office overhead and for extended job site overhead, but it fails to explain why it only conceded 43 days. It contends that it did not grant Redondo an extension of time to finish the project. On the other hand, Redondo calculated 163 additional days, because he contend that PRHTA did grant him the extension of time.

On the other hand, Redondo explained that the project was started on November 17, 1997, it was supposed to be finished on November 16, 1998, for a total of 364 days. Then, PRHTA did give Redondo an extension of time in the letter dated May 17, 1999 (Exhibit 73). The final date was moved to April 28, 1999, 527 days (Exhibit 73). Thus, 527 days minus (-) 364 days, for a total of additional days of 163.

The Court concludes that Redondo is entitled as per the letter dated May 17, 1999 (Exhibit 73) to the extended main office overhead and the extended job site overhead for 163 days.

| | | |
|---|---|---|
| Extended Main Office Overhead | $ 500 × 163 = | $ 81,500.00 |
| Extended Job Site Overhead | $1,989 × 163 = | $ 324,207.00 |
| Total that PRHTA owes to Redondo | | $ 405,707.00 |

### 2. Termination of Contract

PRHTA contends that it did not terminate the contract of the Kennedy Avenue, it only eliminated some of the contract work. It asserts that this course of action was in their best interest and that according to the Blue Book they can eliminate work without meaning that the contract was terminated. The Blue Book also states in section 109.5 d. that no allowance will be made for claims for loss of anticipated profit or loss of expected reimbursement for the elimination of any item. On the other hand, Scott asserted that although he could not evaluate this claim due to the lack of sufficient project documentation, at the end of his calculation of the amount owed by PRHTA to Redondo, he did include the amount claimed by Redondo due to the termination of the contract (Defendant's Exhibit E, Scott's Expert Report, page 57–58). Redondo avers that PRHTA unilaterally terminated part of the contract and that he is entitled to compensation for the termination of the contract. Section 108.11 allows the contractor to claim for its damages and costs related to the termination of a contract or to a portion thereof.

The Court concludes that Redondo is entitled to compensation for the termination of the contract in the amount of $164,627.62.

### 3. Profit (15%)

Same as the section entitled: Profit, *supra*, discussed in the Las Cumbres Avenue Project.

### 4. Interest

Same as the section entitled: Interest, *supra*, discussed in the Las Cumbres Avenue Project.

### 5. Interest for Application for Payment No. 19 and 20F

██ Application for Payment No. 19 and 20F were consigned in Court after the debtor filed for bankruptcy, well after the project was finished; thus, Redondo is entitled to collect interest from the time the amounts were due, up to the date when it collected the amounts due. Thus, Redondo is entitled to the amount of $217,079.49.

### Summary

| | | |
|---|---|---|
| 1. Extended Main Office/ Job Site Overhead | | $ 405,707.00 |
| 2. Termination of Contract | | $ 164,627.62 |
| 3. Profit | | $ 85,550.19 |
| | TOTAL | $ 655,550.19 |
| 4. Plus Legal Interest 6% | | |
| 5. Interest on Application for Payment No. 35F | | $ 217,079.49 |

### D. Contract AC–100029–Road PR–10·Ponce-Adjuntas

In the present case nine claims are still pending. Redondo claims: 1. Extended main office overhead and Extended job site overhead, 2. Insurance and Bonds Premiums, 3. Patent and Excise Taxes, 4. Fuel Increase, 5. Guard Rail, 6. Profit, 7. Interest, 8. Interest on Application for Payment No. 55 and No. 56 and Certification 57F.

### 1. Extended main office overhead and extended job site overhead

Redondo is claiming $121,671.00 for extended main office overhead and $365,013.00 for extended job site overhead, for a total of $486,684.00. PRHTA is contending that it does not owe Redondo any amount, but instead it overpaid Redondo the amount of $1,695,126.00 for both, the extended main office overhead and the extended job site overhead.

In the Plaintiff's Exhibit 129(a), Redondo and PRHTA accorded that they would pay $1.00 of the $8.20 unit price of the excavation, to cover the extended overhead for the extension of time of 253 days granted. In the letter dated November 28, 2001, Redondo was granted the right to claim 99 days of extended overhead (Plaintiff's Exhibit # 123). PRHTA did not prove that Redondo was overpaid. Redondo was paid for the extended overhead of 253 days with the extra $1.00 for excavation for a total of $1,243,748, but, Redondo was still owed the extension of time of 99 days.

The Court concludes that Redondo is entitled as per the two settlement agreements to the extended main office overhead and the extended job site overhead, for the second extension of time given, for the 99 days extension.

| | | |
|---|---|---|
| Extended Main Office Overhead | $1,229 × 99 = | $ 121,671.00 |
| Extended Job Site Overhead | $3,687 × 99 = | $ 365,013.00 |
| Total that PRHTA owes to Redondo | | $ 486,684.00 |

### 2. Insurance and Bonds Premiums

▮ Redondo provided evidence of the insurance paid (Plaintiff's Exhibit 136e). On the other hand, PRHTA did not present evidence as to what payments if any, it refunded to Redondo. The evidence of the insurance paid was the amount of $106,190.00 (Plaintiff's Exhibit 136e).

Thus, the Court concludes that Redondo is entitled to the amount of $106,190.00.

### 3. Patents and Excise Taxes

▮ Redondo provided evidence of a check made payable to the College of Engineers paid (Plaintiffs Exhibit 135c and 135d) and the documental evidence that proves how much it paid to the Municipality of Ponce for municipal taxes. PRHTA did not present evidence as to what payments if any, it refunded to Redondo.

Redondo provided copy of all the checks made to the order of Municipality of Ponce, for a total of 19 checks (Plaintiff's Exhibit # 135e and 135f), all with different checks numbers and dates. The total amount of all the checks made by Redondo, to the order of Municipality of Ponce is $1,082,651.56, for the total of the 19 checks (Plaintiff's Exhibit 135e and 135f). The check made payable to the College of Engineers was for the total of $21,823.00 (Plaintiffs Exhibit 135c and 135d).

### 4. Fuel Increase

Redondo and PRHTA stipulated that the amount that is owed to Redondo is $85,214.02 (docket # 363).

### 5. Guard Rail

Redondo and PRHTA stipulated that the amount that is owed to Redondo is $111,176.50 (docket # 363).

### 6. Profit (15%)

Same as the section entitled: Profit, *supra*, discussed in the Las Cumbres Avenue Project.

### 7. Interest

Same as the section entitled: Interest, *supra*, discussed in the Las Cumbres Avenue Project.

### 8. *Interest for Application for Payment No. 55 and 56*

■ The applications for Payment No. 55 and 56 were paid well after the project was finished, thus, Redondo is entitled to collect interest from the time when the amounts were due, up to when it collected the amounts due. Thus, Redondo is entitled to the amount of $32,078.18 and $14,572.42.

**Summary**

| | | |
|---|---|---|
| 1. | Extended Main Office/ Job Site Overhead | $ 486,684.00 |
| 2. | Insurance and Bond Premiums | $ 106,190.00 |
| 3. | Patents and Excise Taxes | $1,082,654.56 |
| | | $ 21,823.00 |
| 4. | Fuel Increase | $ 85,214.02 |
| 5. | Guard Rail | $ 111,176.50 |
| 6. | Profit | $ 284,060.86 |
| | TOTAL | $2,177,799.94 |
| 7. | Plus Legal Interest 6% | |
| 8. | Interest Application No. 55 and No. 56 | $ 32,078.18 |
| | | $ 14,572.42 |

### E. *Contract AC 800135—Third Millennium Park*

In the present case seven claims are still pending. Redondo claims: 1. extended main office overhead and extended job site overhead, 2. Additional Construction Overtime, 3. Liquidated damages, 4. Insurance and Bonds Premiums, 5. Profit (15%), 6. Unpaid Application for Payment No. 29 and 7. Interest.

### 1. *Extended main office overhead and extended job site overhead*

■ Redondo is claiming $284,988.00 for extended main office overhead and $943,356.00 for extended job site overhead, for a total of $1,228,344.00. PRHTA is accepting $133,518.00 for extended main office overhead and $441,966.00 extended job site overhead, for a total of $575,484.00. The parties stipulated the amount to be calculated per diem for both claims; for extended main office overhead $561.00 per diem and for extended job site overhead $1,857.00 per diem. The only difference is the amount of days calculated by Redondo and by PRHTA. PRHTA asserts that it only owes ·238 additional days for extended main office overhead and for extended job site overhead. PRHTA's expert witness concluded that Redondo was paid $750,000.00 for extended main office overhead and extended job site overhead. On the other hand, Redondo calculated 508 additional days.

Both Redondo's expert witness and PRHTA's expert witness (Plaintiff's Exhibit 2 and Defendant's Exhibit E), concluded that Redondo is entitled to 607 days for extended main office overhead and for extended job site overhead. Redondo correctly admitted that both expert witnesses miscalculated the days and the correct amount is 508 days. On the other hand, in Plaintiff's Exhibit 218 the settlement agreement states that the $750,00.00 would be paid for the concept of acceleration of work but not for the extended overhead. Thus, the Court concludes that Redondo is entitled to 508 days of extended overhead.

| | | |
|---|---|---|
| Extended Main Office Overhead | $ 561 × 508 = | $ 284,988.00 |
| Extended Job Site Overhead | $1,857 × 508 = | $ 943,356.00 |
| Total that PRHTA owes to Redondo | | $1,228,344.00 |

### 2. *Additional Construction Overtime*

■ No evidence was provided by Redondo to demonstrate Redondo was entitled to additional construction overtime from March 10, 2000 to May 31, 2001. The Court notices that overhead was paid from March 11, 2000 to July 2001. The Court will not grant additional overtime, when additional overhead is being paid.

### 3. *Liquidated damages*

On August 27, 1999, the parties agreed to extend the completion date from December 2, 1999 to December 17, 1999 (docket # 366 stipulate facts), both parties also agree that the first part of the project

was not completed on December 17, 1999, but on December 31, 1999. Thus, as per the agreement between the parties, the liquidated damages that would be imposed by PRHTA would be $4,000.00 per day after December 17, 1999 (docket # 366, stipulated facts). As per Plaintiff's Exhibit # 227 in the contract final report PRHTA retained $162,500.00. If the agreement for the final completion was December 17, 1999, but Redondo finally completed the first phase of the project on December 31, 1999, then PRTHA can withhold the liquidated damages for 14 days.

| | | | |
|---|---|---|---|
| Amount retained by PRHTA | | $ | 162,500.00 |
| Liquidated Damges | $4,000 × 14 = | $ | 56,000.00 |
| Amount to refund to Redondo | | $ | 106,500.00 |

### 4. *Patents and Excise Taxes*

Redondo provided evidence of the municipal taxes (Plaintiff's Exhibit 228) and a check made payable to the College of Engineers (Plaintiffs Exhibit 228). On the other hand, PRHTA did not present evidence as to what payments if any, it refunded to Redondo.

The evidence of the municipal taxes paid was for the amount of $37,811.00 (Plaintiff's Exhibit 228) and the check made payable to the College of Engineers was for the total of $21,703.00 (Plaintiffs Exhibit 228). Thus, the Court concludes that Redondo is entitled to $59,514.00 for patents and excise taxes for the project of the Third Millennium Park.

### 5. *Profit (15%)*

Same as the section entitled: Profit, *supra*, discussed in the Las Cumbres Avenue Project.

### 6. *Unpaid Application for Payment No. 59*

Same as the section entitled: Unpaid Application for Payment, *supra*, discussed in the Las Cumbres Avenue Project.

### 7. *Interest*

Same as the section entitled: Interest, *supra*, discussed in the Las Cumbres Avenue Project.

**Summary**

| | | |
|---|---|---|
| 1. | Extended Main Office/ Job Site Overhead | $1,228,344.00 |
| 2. | Additional Construction Overtime | $ 0.00 |
| 3. | Liquidated Damages | $ 106,500.00 |
| 4. | Patents and Excise Taxes | $ 59,514.00 |
| 5. | Profit | $ 209,153.70 |
| 6. | Unpaid Application for Payment No. 29 | $ 41,363.33 |
| | TOTAL | $1,644,875.03 |
| 7. | Plus Legal Interest 6% | |

### ORDER

**IT IS ORDERED** that PRHTA will compensate Redondo for the total amount of $4,506,828.29, plus legal interest at 6% from August 10, 2001, for the Project Las Cumbres Avenue.

**IT IS ORDERED** that PRHTA will compensate Redondo for the total amount $1,258,475.13, plus legal interest at 6% from August 10, 2001, for the Project Rio Grande de Loiza Bridge.

**IT IS ORDERED** that PRHTA will compensate Redondo for the total amount $655,550.19, plus legal interest at 6% from July 18, 1999, plus $ 217,079.49, for the Project Kennedy Avenue.

**IT IS ORDERED** that PRHTA will compensate Redondo for the total amount $2,177,799.94, plus legal interest at 6% from August 10, 2001, plus $46,650.60 for the Project Ponce–Adjuntas.

**IT IS ORDERED** that PRHTA will compensate Redondo for the amount of $1,644,875.03, plus legal interest at 6% from December 3, 2000, for the Project The Third Millennium Park.

**SO ORDERED.**